**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARY O. FUREY,**

                              **Plaintiff,**

              **v.**                                                **1:03-CV-1215**
                                                                          **(GLS)**

**UNITED STATES OF AMERICA,**

                              **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**

BASCH, KEEGAN LAW FIRM          DEREK SPADA, ESQ.
P.O. Box 4235
307 Clinton Avenue
Kingston, New York 12402

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY          BARBARA D. COTTRELL
United States Attorney          Assistant United States Attorney
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207-2924

**Gary L. Sharpe**
**U.S. District Judge**

                    <u>**MEMORANDUM-DECISION AND ORDER**</u>

## I. Introduction

While walking across an unpaved landscape area at the Greenfield Center Post Office, Mary O. Furey slipped and fell on a slushy accumulation of snow and ice, and fractured her ankle. She sued under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et. seq.*, claiming that the Post Office negligently failed to maintain the area or warn her about walking there. Following a bench trial, the court reserved. For the reasons that follow, judgment is granted to Furey, and comparative damages are awarded in the total amount of eighteen-thousand and seven-hundred and fifty dollars ($18,750).

## II. Burden of Proof

The FTCA "requires application of the whole law of the State where the act or omission occurred." *Richards v. U.S.*, 369 U.S. 1, 11 (1962); *see also Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994) (citing 28 U.S.C. § 1346(b)(1)). In New York, a plaintiff must prove negligence by a preponderance of the evidence. *See Torem v. 564 Cent. Ave. Rest., Inc.*, 133 A.D.2d 25, 26 (1st Dep't 1987); *see also* NEW YORK PATTERN JURY INSTRUCTIONS - CIVIL, Vol. 1A, 1:23 (3d ed. 2005). If a defendant pleads comparative fault as a defense, it bears the same burden of proof on that

2

issue.  *See Gonzalez v. Medina*, 69 A.D.2d 14, 19-20 (1st Dep't 1979); *see also* N.Y.C.P.L.R. §§ 1411, 1412 (McKinney 1997); NEW YORK PATTERN JURY INSTRUCTIONS - CIVIL, Vol. 1A, 2:36 (3d ed. 2005).

## III.  Findings of Fact

Having applied the shifting burden of proof applicable to negligence actions involving comparative fault, *see Grisoff v. Nicoletta*, 107 A.D.2d 1047, 1048 (4th Dep't 1985), and having resolved issues of credibility, the court recites its factual conclusions.  *See* FED. R. CIV. P. 52.

Access to the Greenfield Center Post Office is through eastward facing doors located at the southeast corner of the building.  Customers normally park in a paved lot south of the building.  The parking lot is bounded on the north by a curb which is six feet from the building's exterior.  The lot has several marked spaces that are perpendicular to the building.  A paved sidewalk runs east from the doors, and turns six feet south, past the southeast corner of the building, to the parking lot.  There is a six-by-twenty foot unpaved landscape area running west from the southeast corner of the building, and adjacent to the parking lot on the north and the paved sidewalk on the east.  The landscape area has no plants, but it is decorated with a layer of red ornamental stone.

The configuration of the landscape area and its cover of ornamental stone existed for more than five years at the time of Furey's accident. During that time, customers who parked west of the southeast corner of the building routinely used the landscape area as the shortest route into the Post Office.  Although the Postmaster was aware that they did so, she did nothing to provide for snow and ice removal because she had never received complaints.  Because she had received no complaints and since the parking lot and sidewalk were routinely cleared to provide safe access, she did nothing to dissuade customers from using the landscape area such as posting a sign or erecting a fence.  She was, however, subject to the following postal regulation:  "You must establish snow and ice removal plans where necessary.  Pay particular attention to areas where customers and other pedestrians may slip and fall.... Provide for reinspection and cleaning as often as necessary to handle drifting snow and refreezing...." *See Supervisor's Safety Handbook, Handbook EL-801 at 8-15.2, Ex. 35.*

During the two weeks preceding December 20, 2002, at least nineteen inches of snow had fallen.  The snow had been periodically cleared from the parking lot and sidewalk and partially plowed and shoveled into the landscape area.  On December 20, it was cloudy and

4

misty, but there was no discernible precipitation.  Although there was a

spotty cover of snow, ice and slush on the ornamental stone, the parking

lot and sidewalk were wet, but otherwise clear.

Shortly after 1:00 P.M., Furey drove to the Post Office to transact

business and parked in a marked spot several spaces to the west of the

southeast corner of the building.  As was her custom when parked in that

location, she exited her vehicle and took the most direct route into the Post

Office.  She walked to the front of her car, stepped over the curb onto the

landscape area, walked along the south side of the building, stepped onto

the sidewalk, and entered the Post Office.  As she did so, it should have

been obvious to her that the ornamental stone was covered with slush.

Had she looked at her surroundings, it would have been readily apparent

that the parking lot and sidewalk were free of slush.  The court discredits

her testimony that after exiting her vehicle, she first surveyed her

surroundings, and ascertained that the condition of the landscape area, the

parking lot and the sidewalk were identical; namely, slush-covered.

Instead, the court finds that the parking lot and sidewalk were clear, that

she never looked, and that she simply took her usual route.

After conducting her business, Furey exited the Post Office as she

5

had entered and began to retrace her route to her vehicle.  After she stepped from the clear sidewalk onto the ornamental stone, and within a distance of several feet, she slipped on slush covered ice, fell on her right side, and fractured her right ankle.

Within thirty minutes, she was transported to a hospital by ambulance.  Once there, an x-ray revealed transverse fractures of her ankle, one on the inner bone and another on the outer bone.  She was in considerable pain, and was prescribed pain medication.  She was admitted to the hospital, and surgery was performed the next day.

Dr. Fein, an orthopedic surgeon, performed an open reduction internal fixation.  After making a surgical incision to expose the two fractures, he inserted an interfragmentary screw in the inner ankle and a plate and several screws in the outer ankle.  He then immobilized the ankle with a rigid fiberglass splint.

After three days, Furey was discharged from the hospital, and she was prescribed Percocet to control her pain.  She was confined to a wheel chair for approximately three weeks, required crutches and a walker until April, and thereafter underwent thirty-nine physical therapy sessions. Throughout her recuperation, she remained under Dr. Fein's care.  During

that time, he first replaced the splint with a removable, rigid cast (CAM

Walker), and then an air cast.  By October, the plate was causing Furey

discomfort, and a second operation to remove it was performed on October

10, 2003.  The ankle was again immobilized with various casts until they

were permanently removed in early 2004.

On March 26, 2004, Furey was examined by Dr. Bilfield, an

orthopedic surgeon.  The court credits his conclusion that other than

surgical scars on her right ankle, Furey had fully recovered.

In November 2003, and while recuperating from her ankle injury,

Furey reported shoulder pain to Dr. Fein.  She was ultimately diagnosed

with a partial rotator cuff tear that was surgically repaired in the Fall.  Furey

failed to prove that the rotator cuff tear was causally related to her fall at

the Post Office.  After her December 2002 fall, she never complained about

the shoulder problem until eleven months later.  She told Dr. Fein that she

had collided with another individual weeks before she reported the injury

and subsequently urged him to change his treatment notes to reflect that

the injury had occurred earlier.  The court also discredits her testimony

concerning the lingering effects of the ankle injury.  In an obvious effort to

exacerbate the continuing extent of her injury, she testified that she still

7

suffered bouts of considerable pain and significant limitations on her mobility.  The testimony of both her treating physician, Dr. Fein, and the consulting expert, Dr. Bilfield, contradicted those claims.  Nonetheless, Furey's recuperation lasted fourteen months, necessitated, in part, by the second surgery which was directly caused by the original fall.  During her recuperation, she suffered from varying limitations on both her mobility and her ability to engage in many of her customary life's activities.

## IV. Analysis

### A. Liability

To establish negligence, Furey must prove: (1) that the Post Office owed her a duty; (2) that it breached that duty; and (3) that her injuries were substantially caused by that breach.  *See Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002).  The Post Office maintains that it satisfied any duty it owed Furey by clearing the parking lot and sidewalk, thus providing reasonable access along a path free of snow, ice and slush.  Therefore, it argues, it had no duty to clear the landscape area or otherwise warn its customers not to use it.  It also argues that Furey assumed the risk that she would slip and fall when she opted to use the slush covered pathway.

8

The Post Office is correct that absent a duty, there can be no liability. *See Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (citations omitted).  The Second Circuit has observed that in New York "the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges."  *Lombard*, 280 F.3d at 216 (citing *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994)).  "[T]he determination of the existence of a duty and the concomitant scope of that duty involve a consideration not only of the wrongfulness of the defendant's action or inaction, they also necessitate an examination of [the] plaintiff's reasonable expectations of care owed to him by others."  *Alfaro*, 210 F.3d at 115 (quoting *Turcotte v. Fell*, 68 N.Y.2d 432, 437 (1986) (alteration in original).  Ultimately,

> whenever one person is by circumstances placed in
> such a position with regard to another that everyone
> of ordinary sense who did think would at once
> recognize that if he [or she] did not use ordinary
> care and skill in his [or her] own conduct with regard
> to the circumstances he [or she] would cause
> danger of injury to the person or property of
> another, a duty arises to use ordinary care and skill
> to avoid such danger.

*Palka*, 83 N.Y.2d at 585 (internal quotation marks and citation omitted).

Once a duty relationship is well-established, federal courts play a limited

role when ascertaining the scope of that duty.  *See Alfaro*, 210 F.3d at 115.

Given the lack of factual development in many of New York's reported

opinions, however, it is sometimes difficult to discern whether a duty

relationship is well-established.

As support for its argument that it owed Furey no duty, the Post

Office cites *Rosenbloom v. City of New York*, 254 A.D.2d 474 (2d Dep't

1998).  There, the plaintiff slipped and fell on ice on a dirt pathway which

was not "a public walkway, but rather had been created by the habitual

traffic of pedestrians hastening to and from their commuter trains."  *Id.* at

475.  The court held that the defendant "had no duty to clear snow and ice

from an unpaved area that was not intended to be a public walkway,

particularly when nearby sidewalks provided an adequate means of access

to and from the railroad station."  *Id.*  Other New York Appellate Courts

have cited *Rosenbloom* for the apparent proposition that landowners

satisfy their duty to pedestrians in wintry conditions when they provide

obvious, alternative paths free of snow and ice.  *See Sanders v. City of

New York*, 17 A.D.3d 169, 170 (1st Dep't 2005); *Wesolowski v.

Wesolowski*, 306 A.D.2d 402 (2d Dep't 2003); *Malley v. Alice Hyde Hosp.

Ass'n*, 297 A.D.2d 425 (3d Dep't 2002).  None of these cases, however,

discuss foreseeability, a central component of the negligence analysis, nor

do they recite facts that would foster such an analysis.  Thus, they are

legally and factually distinguishable.

Regarding foreseeability,

[i]t is well settled that a landowner has a duty to exercise
reasonable care in maintaining his own property in a
reasonably safe condition under the circumstances.  The nature
and scope of that duty and the persons to whom it is owed
require consideration of the likelihood of injury to another from
a dangerous condition on the property, the seriousness of the
potential injury, the burden of avoiding the risk and the
*foreseeability of a potential plaintiff's presence on the property*.

*Galindo v. Town of Clarkstown*, 2 N.Y.3d 633, 636 (2004) (emphasis

added); *see also Peralta v. Henriquez*, 100 N.Y.2d 139, 144 (2003)

(frequency of use by others relevant to foreseeability); *Hendricks v. Lee's

Family, Inc.*, 301 A.D.2d 1013 (3d Dep't 2003) (same).  "[I]t is for the court

to determine whether any duty exists, taking into consideration the

reasonable expectations of the parties and society generally.  The scope of

any such duty of care varies with the foreseeability of the possible harm."

*Tagle v. Jakob*, 97 N.Y.2d 165, 168 (2001).

Foreseeability is a critical factor when reconciling snow and ice

cases.  In *Bergen v. Carlin*, 297 A.D.2d 692, 693 (2d Dep't 2002), a

11

homeowner was subject to liability for failing to clear an unpaved driveway because its use by visitors was foreseeable. *Id.* at 693. By the same token, a property owner was deemed free of liability when the presence of an injured party on a snow and ice covered driveway was not foreseeable. *See DeMarrais v. Swift*, 283 A.D.2d 540, 541 (2d Dep't 2001). Significantly, the court in *DeMarrais* cited *Rosenbloom*, obviously believing it was distinguishable on the basis of foreseeability, although that conclusion is certainly not self-evident from either the facts or the language of *Rosenbloom* itself.

In this case, foreseeability is self-evident because the Post Office conceded that it knew customers were using the landscape area as a walkway. Therefore, and at least insofar as commercial premises are concerned, owners have a duty to maintain routine pathways used by customers to access the business when the owners know that they are doing so.[1] Accordingly, the Post Office owed Furey a duty. It remains, however, to define the scope of that duty.

In order to establish premises liability for a slip and fall due to ice, a

---

[1]The court recognizes that New York no longer distinguishes premises liability on the basis of the status of those found on the property. *See Basso v. Miller*, 40 N.Y.2d 233, 241 (1976). Commercially, however, routine customer habits are factors probative of foreseeability.

12

plaintiff must prove:  (1) that the defendant knew or, in the exercise of reasonable care, should have known that icy conditions existed; and, (2) that the defendant failed to exercise due care to remedy the situation within a reasonable time after cessation of the storm or temperature fluctuations that created the dangerous condition.  *See Kalar v. Zaia*, 66 F. Supp. 2d 359, 361 (N.D.N.Y. 1999) (citations omitted).  Furthermore, an owner may be liable if he actually creates the dangerous condition, or attempts to remedy it, but makes it more hazardous.  *See Campanella v. 1955 Corp.*, 300 A.D.2d 427 (2d Dep't 2002) (creates); *Sanders v. City of New York*, 17 A.D.3d 169 (1st Dep't 2005) (attempts to remedy).

The Post Office knew, or should have known, that icy conditions existed in the landscape area, but it did nothing to remedy the problem.  In fact, it concedes that it created the condition by intentionally plowing and shoveling snow there, and then failed to sand or salt it.  Although it did seek to satisfy its duty by providing alternative, cleared pathways, that remedy was insufficient to absolve it from all liability.  *See Witherspoon v. Columbia University*, 7 A.D.3d 702, 703 (2d Dep't 2004) (Presence of an alternative route did not relieve the defendant of the duty to maintain the courtyard in a reasonably safe condition as a matter of law).  Lastly, it did

not post a warning sign or otherwise fence the area so as to preclude its

use.  Had it elected either of these relatively inexpensive alternatives as a

means to protect its customers, it might have satisfied the duty it owed

them.  *See, e.g., Burke v. Spartanics Ltd.*, 252 F.3d 131, 137-140 (2d Cir.

2001).

The Post Office alternatively argues that it is not liable because Furey

assumed the risk of her injuries when she elected to walk across the

landscape area instead of the cleared parking lot and sidewalk.  This is

simply another argument that it owed Furey no duty, *see Integrated Waste*

*Services, Inc. v. Azko Nobel Salt, Inc.*, 113 F.3d 296, 300 (2d Cir. 1997),

and as such, it is misplaced.

In 1975, New York adopted a comparative negligence statute, *see*

*Arbegast v. Bd. of Educ. of S. New Berlin Cent. Sch.*, 65 N.Y.2d 161, 165-

66 (1985), which provides:

> [i]n any action to recover damages for personal
> injury...the culpable conduct attributable to the claimant...,
> including contributory negligence or assumption of risk,
> shall not bar recovery, but the amount of damages
> otherwise recoverable shall be diminished in the
> proportion which the culpable conduct attributable to the
> claimant or decedent bears to the culpable conduct which
> caused the damages.

N.Y. C.P.L.R. § 1411.  Assumption of the risk is either express or implied.

"Express assumption of the risk ... [is] defined as an 'agreement in advance

that defendant need not use reasonable care for the benefit of plaintiff and

would not be liable for the consequence of conduct that would otherwise be

negligent.'"  *Integrated Waste Services, Inc.*, 113 F.3d at 301 (citing

*Arbegast*, 65 N.Y.2d at 169).  Implied assumption of the risk may exist

when a plaintiff voluntarily encounters a risk emanating from a defendant's

conduct with a full understanding of the possible harm to himself and

unreasonably consents to the risk under the circumstances.  *See Arbegast*,

65 N.Y.2d at 169.  Express assumption of the risk has survived New York's

comparative negligence statute, *see Integrated Waste Services, Inc.*, 113

F.3d at 301, but there was no express agreement between Furey and the

Post Office.

     As an independent doctrine, implied assumption of the risk has not

survived the comparative negligence statute.  *See Schneider v. Revici*, 817

F.2d 987, 994–95 (2d Cir. 1987).  For that reason, to the extent the Post

Office's argument appears to rely on the doctrine as a complete defense, it

is unavailing.  Instead, and consistent with C.P.L.R. § 1411, implied

assumption of the risk has continued vitality only to the extent that it is an

aspect of comparative negligence that may diminish "plaintiff's recovery in the proportion to which he may have contributed to his own injuries." *Peebles v. Circuit City Stores, Inc.*, 01-CV-0195, 2003 WL 21976402, at *5 (S.D.N.Y. Aug. 19, 2003).

When confronting dangerous risks that inevitably arise on a daily basis, people must exercise care to protect themselves to the same extent others would reasonably do so under similar circumstances. In other words, plaintiffs owe themselves a duty "to recognize obvious hazards and exercise the appropriate level of caution." *Catherman v. U.S.*, 90-CV-576, 1992 WL 175258, at *14 (N.D.N.Y. July 21, 1992). When they fail to do so, New York's comparative negligence statute splits liability between plaintiffs and defendants based on their relative culpability and the causal significance of their conduct. *See Integrated Waste Services, Inc.*, 113 F.3d at 300. In order to assess comparative negligence, the court must weigh all factors that caused an injury and the relative culpability of each party for those contributing factors. There is no magic formula governing the analysis.

The icy condition of the landscape area caused Furey's fall and her ankle fracture. The Post Office knew customers were using the area but

16

did nothing to sand or salt it, or otherwise warn customers not to use it.  In fact, it created the condition when it cleared snow from the sidewalk and parking lot and deposited it there.  On the other hand, Furey paid no attention to the risk of falling associated with walking where she did, a risk she should have realized when she first entered the Post Office.  Had she really surveyed her options as she claimed, she could have easily exercised care for her own safety by walking on the cleared sidewalk and parking lot.  Comparatively, the percentage of fault attributable to Furey is seventy-five percent, and the percentage of fault attributable to the Post Office is twenty-five percent.

### B. <u>Damages</u>

Once a plaintiff establishes negligence as the proximate cause of her injuries, she is entitled to recover "a sum of money which will justly and fairly compensate...[her]...for the loss resulting from the injuries sustained." *Robinson v. U.S.*, 330 F. Supp. 2d 261, 290 (W.D.N.Y. 2004) (quoting *Kehrli v. City of Utica*, 105 A.D.2d 1085, 1085 (4th Dep't 1984)).  Generally, damages are categorized as either pecuniary or non-pecuniary.  Pecuniary damages assess the economic consequences of an injury and include medical expenses, lost earnings and the cost of care.  *See McDougald v.*

*Garber*, 73 N.Y.2d 246, 251 (1989); *see also Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1082 (2d Cir.1988).  Furey seeks no pecuniary damages.

In New York, the term "pain and suffering" encompasses all items of general, non-pecuniary damages and includes the physical and emotional consequences of an injury.  *See McDougald*, 73 N.Y.2d at 255-57.  It also includes the loss of the enjoyment of life which compensates for "the frustration and anguish caused by the inability to participate in activities that once brought pleasure."  *Id.* at 257; *see also Nussbaum v. Gibstein*, 73 N.Y.2d 912, 914 (1989).  The necessity of further surgery may exacerbate pain and suffering, while pain medication may alleviate it.  *See Caro v. Skyline Terrace Coop., Inc.*, 132 A.D.2d 512, 513 (2d Dep't 1987) (further surgery); *Seargent v. Berben*, 235 A.D.2d 1024, 1026 (3d Dep't 1997) (pain managed with medication); *Naughton v. Arden Hill Hosp.*, 215 A.D.2d 810, 813 (3d Dep't 1995) (same).

Furthermore, damages for past and future pain and suffering must be distinguished.  Past pain and suffering refers to damages from the date of the accident through trial, while future pain and suffering refers to damages that will reasonably occur thereafter.  *See, e.g., Fenocchi v. City of*

18

*Syracuse*, 216 A.D.2d 864, 865 (4th Dep't 1995); *Urban v. Wal-Mart Stores, Inc.*, No. 96-CV-0330, 1998 WL 760263, *3 (N.D.N.Y. Oct. 27, 1998).  When considering future pain and suffering, such damages must be reasonably certain, *see Yarrow v. U.S.*, 309 F. Supp. 922, 932 (S.D.N.Y. 1970), but there is no requirement that they be permanent, *see Gallagher v. Samples*, 6 A.D.3d 659, 660 (2d Dep't 2004).  Although the life span during which there will be pain and suffering is a factor to be considered in fixing an award, the award is not to be made on a unit-of-time basis, and is at best an estimate.  *See Paley v. Brust*, 21 A.D.2d 758, 758 (1st Dep't 1964).

Ultimately, "[t]here is no precise rule for determining pain and suffering and a trier of fact is bound by a standard of reasonableness in light of all the evidence." *Estevez v. U.S.*, 72 F. Supp. 2d 205, 208 (S.D.N.Y. 1999).  When determining pain and suffering awards, courts often look to awards in similar cases.  *See, e.g., Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 425 (1996); *see also Estevez v. U.S.*, 72 F. Supp. 2d at 208 (prior verdicts may guide and enlighten the court); *Coniker v. State*, No. 86901, 2002 WL 32068270, at *22 (N.Y. Ct. Cl. Dec. 23, 2002) (courts look to other awards given).  When evaluating such awards,

the court should compare gross verdicts for similar injuries, not the net after it has been reduced for comparative negligence.  *See Ragona v. Wal-Mart Stores, Inc.*, 62 F. Supp. 2d 665, 669 (N.D.N.Y. 1999) (citations omitted).

In *McAdams v. U.S.*, No. 04-CIV.-6541, 2006 WL 1738028 (S.D.N.Y. June 22, 2006) and *Palmieri v. Celebrity Cruise Lines*, No. 98-Civ.-2037, 2000 WL 310341 (S.D.N.Y. Mar. 27, 2000), Judges Maas and Pitman surveyed ankle injury cases.  As Judge Maas observed, "awards approved by New York courts...range from $16,000 to millions of dollars, depending on the extent of the injury, whether surgery was required, and whether the fracture resulted in permanent limitations."  *McAdams*, 2006 WL 1738028, at *8.  The plaintiff in *McAdams* sustained injuries similar to those of Furey.  Citing comparative New York cases with pain and suffering awards ranging from thirty to seventy-five thousand dollars, *see id.* at *8, Judge Maas awarded thirty-five thousand dollars.  *See Id.* at *9.

Furey's ankle fracture was accompanied by considerable pain, surgery, the insertion of a plate and interfragmentary screws, and a second surgery ten months later to remove the plate because she was experiencing discomfort.  For fourteen months, she suffered from varying limitations on her mobility and from her inability to engage in a number of

20

her customary life's activities.  She also underwent thirty-nine physical therapy sessions.  On the other hand, her pain throughout her recuperation was controlled by medication, and her trial testimony concerning the lingering effects of the injury was disingenuous.

The court concludes that Furey is entitled to an award for past pain and suffering in the amount of seventy-five thousand dollars.  Because of the court's finding regarding her trial testimony about the lingering effects of her injury, it concludes that Furey has failed to prove that she will endure any future pain and suffering.  Accordingly, it declines to award any money for this component of non-pecuniary damages.  Having determined that Furey is seventy-five percent comparatively negligent, the total award is eighteen-thousand and seven-hundred and fifty dollars ($18,750).

## IV.  <u>Conclusion</u>

For the reasons recited in this Memorandum-Decision and Order, judgment is granted to Mary O. Furey against the United States in the amount of eighteen-thousand and seven-hundred and fifty dollars ($18,750).

**IT IS SO ORDERED.**

October 23, 2006

Albany, New York

Gary L. Sharpe
U.S. District Judge